**Application of Philip M. CARABATEAS.**

**Patent Appeal No. 7505.**

United States Court of Customs and Patent Appeals.

Jan. 13, 1966.

---

Laurence & Laurence, Washington, D. C. (Dean Laurence, Herbert I. Sherman, Washington, D. C., of counsel), for appellant.

Clarence W. Moore, Washington, D. C. (Jack E. Armore, Washington, D. C., of counsel), for the Commissioner of Patents.

Before RICH, Acting Chief Judge, MARTIN, SMITH, and ALMOND, Judges, and Judge WILLIAM H. KIRKPATRICK.*

ALMOND, Judge.

Philip M. Carabateas appeals from the decision of the Board of Appeals affirming the rejection of claim 1 in his application[1] entitled "Compositions and Their Preparation."

Claim 1 reads as follows:

1. 4-Phenyl-1-(2-phenylaminoethyl)-4-propionoxypiperidine.

---

Section 294(d), Title 28, United States Code.

1. Serial No. 91,606 filed February 27, 1961.

The compound of the claim has the structural formula:

O
‖
O–C–CH₂CH₃ structure...

With regard to the method of making the compound of claim 1, appellant's specification states:

\* \* \* the invention sought to be patented is described as residing in the concept of reacting 1-[N-(lower-aryl) trifluoroacetamido-(poly-carbon-lower-alkyl)]-4-(lower-aryl)-4-piperidinol with a lower acylating agent and then reacting the resulting 4-(lower-acyloxy)-4-(lower-aryl)-1 [N-(lower-aryl)-trifluoroacetamido-(polycarbon-lower-alkyl)]-piperidine with an alkaline agent in a lower alkanol solvent or in a mixture of a lower-alkanol and water to remove the trifluoroacetyl group.
\* \* \*

As an alternative process, the compound 4-phenyl-1-(2-phenylaminoethyl)-4-piperidinol[2] having the structural formula:

may be reacted with trifluoroacetic anhydride whereby the hydrogen of the imino group is replaced by a trifluoroacyl group. Acylation of the 4-OH group can then be effected with propionyl chloride and the trifluoroacyl group selectively removed to restore the imino group.

The references relied on are:

| | | |
|---|---|---|
| Schmidle et al. | 2,846,437 | March 5, 1957 |
| Elpern I | 2,850,500 | February 25, 1958 |
| Elpern III | 2,880,211 | August 5, 1958 |
| Elpern IV | 2,784,192 | September 2, 1958 |
| Elpern II | 2,824,875 | March 31, 1959 |

Braenden et al.—Bull. Wld. Hlth. Org., Vol. 13, p. 962 (1955)

———◆———

Claim 1 stands rejected as being unpatentable over: (1) Elpern III in view of Elpern I, Elpern II, and Braenden et al. under 35 U.S.C. § 103; (2) Elpern IV in view of Elpern III under 35 U.S.C. § 103, and (3) allowed claims 18–21 of appellant's copending application serial No. 12,909 on the ground of double pat-

2. Claims to this compound are before this court in In re Carabateas, USPQ (PA 7517).

enting. In the view we take of this appeal, only the first rejection need be considered.

The claim on appeal and the various references deal with compounds whose structures can be visualized from the following chart:

| COMPOUND OF | A | B |
|---|---|---|
| Claim Here on Appeal | $-O-\overset{O}{\overset{\|}{C}}-CH_2CH_3$ | $-CH_2CH_2-N-\bigcirc$ with $H$ below N |
| Elpern III (US 2 846 437) | $-\overset{O}{\overset{\|}{C}}-O-lower-alkyl$ | $-CH_2CH_2-Z-\bigcirc$ wherein Z is O, S, $SO_2$, NH or N (lower alkyl) |
| Elpern IV (US 2 850 500) | $-O-\overset{O}{\overset{\|}{C}}-CH_2CH_3$ | $-CH_2CH_2-Z-\bigcirc$ wherein Z is O or S |
| Elpern I (US 2 824 875) | $-\overset{O}{\overset{\|}{C}}-O-lower-alkyl$ | $-CH_2-CH=CH-\bigcirc$ or $-CH=CHCH_2-\bigcirc$ or $-CH_2\equiv C-\bigcirc$ or $-C\equiv CCH_2-\bigcirc$ |
| Elpern II US 2 880 211) | $-O-\overset{O}{\overset{\|}{C}}-CH_2CH_3$ | (same as in Elpern I above plus others, which are similar but without any double or triple bonds) |
| Braenden et al. - does not indicate full structure | various | none |

All of the esters disclosed by the prior art exhibit some degree of analgesic activity. The Braenden et al. publication does not disclose any B groups.

A comparison of the structural formulae of the compound of claim 1 and the esters of Elpern III reveals that when Z is NH the two differ only in the rela-

tive positions of the atoms making up the ester group on the 4-position of the piperidine ring.[3] Elpern I and II disclose certain substituted piperidine esters having the same 1-substituents but bearing the normal-reverse ester structural relationship. The latter two references further disclose that such substituted piperidines exhibit analgesic activity in varying degrees. In view of these teachings, we think that given the disclosure by Elpern III of the "normal" ester, the "reverse" ester structure of the compound of claim 1 and its analgesic property would have been obvious within the meaning of section 103.

Appellant contends that his compound has chemical properties which also should be considered along with its formula on the question of obviousness. The only "property" which he refers to, however, is the reactivity of the imino group in the 1-substituent. It was because of this reactivity, appellant contends, that he "had to devise a way to 'enable' his compound, i. e., to make it, since the art disclosed none."

We do not believe that the record evidence is sufficient to support this latter contention. While appellant does not expressly state what property of the imino group he is referring to, we are convinced that he is referring to the imino group's ability to react with an acylating agent to form an acylamido group. This "property" of the imino group apparently presents a synthesis problem *if* one desires to prepare a mono-acylate from a compound having both a hydroxyl group and an imino group since both groups have the ability to react with an acylating agent. It is this "property" of the imino group which apparently necessitated the presence of the trifluoroacyl group *in the process* disclosed and claimed by appellant.

In answer to appellant's contention that the prior art did not disclose a

method of preparing the compound of claim 1, the board stated:

> Appellant does not explain why it would not be feasible to prepare the ester by a procedure analogous to that employed in preparing the reverse ester in the Elpern III patent * * * and it is not apparent why it would not be feasible.

The portion of Elpern III referred to by the board reads as follows:

> An alternative and preferred procedure for preparing the compounds of my invention where Z is NH or N (lower alkyl) consists of introducing stepwise the 1-[(aryl-amino) alkyl] substituent onto the piperidine nucleus by reacting a lower alkyl 4-phenylpiperidine-4-carboxylate with a hydroxyalkyl halide, HO-X-halogen, to form a lower alkyl 4-phenyl-1-(hydroxyalkyl) piperidine-4-carboxylate; treating this 1-hydroxyalkyl compound with a halogenating agent such as thionyl chloride, phosphorus oxychloride, phosphorus tribromide and the like to yield the corresponding lower alkyl 4-phenyl-1-(haloalkyl)-piperidine-4-carboxylate having the formula

> and then reacting the 1-haloalkyl compound with an amine having the

---

3. Esters in which the carbalkoxy group

$$\overset{O}{\underset{\|}{-C}}-OR$$ is directly attached to the 4-carbon of the piperidine ring are referred to by the Patent Office as "normal" esters. When the alkanoyloxy group

$$-O-\overset{O}{\underset{\|}{C}}-R$$ is directly attached to the 4-carbon, the esters are referred to as "reverse" esters.

formula Ar-NHR, where R is hydrogen or a lower alkyl radical * * *.

We agree with the board that it is not apparent why it would not be feasible to employ the above-mentioned process. We note that the starting material there is a lower alkyl-4-phenyl-piperidine-4-*carboxylate* which is reacted first with a hydroxyalkyl-halide, then with thionyl chloride to introduce a chlorine atom onto the terminal carbon of the 1-substituent, followed by reaction with an arylamine to introduce the imino group in the 1-substituent. Since the esters of Elpern III are prepared from piperidines having a *carboxyl* group, rather than a *hydroxyl* group, in the 4-position, Elpern III would not seem to have been faced with appellant's problem of having two groups present capable of competing for the same acylating agent. However, appellant has not convinced us why Elpern III's *process* would not suggest a way of avoiding this problem. By *starting* with the *reverse ester group* in the 4-position, and then in subsequent reactions introducing the imino group in the 1-substituent as taught by Elpern III, the two acylatable groups, viz. hydroxyl and imino, would not be present to compete in any acylation step.

The only argument advanced by appellant in denial of the board's position is that "Elpern III relates to the preparation of 4-carbalkoxy-piperidines, not 4-acyloxy-piperidines, so its procedures could not be used here." While it is true that Elpern III relates to "normal" esters and appellant's compound is a "reverse" ester, it has not been shown why that fact alone rules out adoption of an *analogous* process to that disclosed by Elpern III.

The board's decision is affirmed.

Affirmed.